NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE NICHOLAS L.

No. 1 CA-JV 15-0088
FILED 10-29-2015

Appeal from the Superior Court in Mohave County
Nos. L8015JV201307076 and L8015JV201207072
The Honorable Richard D. Lambert, Judge

**AFFIRMED**

COUNSEL

Law Offices of Heather C. Wellborn, P.C., Lake Havasu City
By Heather C. Wellborn
*Counsel for Appellant Nicholas L.*

Mohave County Attorney's Office, Kingman
By Deborah L. Herbert
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which
Presiding Judge Diane M. Johnsen and Judge Kent E. Cattani joined.

**G E M M I L L**, Judge:

¶1          Nicholas L. ("Nicholas") appeals from the juvenile court's disposition order committing him to the Arizona Department of Juvenile Corrections ("ADJC"). Two issues are presented for review: First, whether Nicholas received ineffective assistance of counsel regarding certain disposition agreements; second, whether the juvenile court abused its discretion when sentencing Nicholas to the ADJC without having explored less restrictive alternatives. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          In September 2012, Nicholas first appeared in juvenile court when he was adjudicated delinquent of possession of marijuana, possession of marijuana in a drug free school zone, and possession of drug paraphernalia, each a class six felony. At the adjudicatory hearing, Nicholas entered into a disposition agreement, admitting to possession of drug paraphernalia. As a result, Nicholas was placed on standard probation for a period of one year, in the custody of his mother.

¶3          In May 2013, Nicholas was ordered to serve two days in the Mohave County Juvenile Detention Center as an intermediate sanction for violating the terms of his probation. This order came after Nicholas received six days of out-of-school suspension and failed to complete any community restitution hours for three months.

¶4          In September 2013, a Petition to Revoke Probation was filed and Nicholas was detained.[1] Nicholas entered into another disposition agreement, which provided for reinstatement to probation with the length, type, and terms of the probation to be determined by the juvenile court in its discretion. Additionally, the disposition agreement stated that Nicholas would be screened for Juvenile Intensive Probation Supervision ("JIPS"). He was reinstated to standard probation.

¶5          In early March 2014, a petition was filed alleging additional probation violations. Nicholas waived the right to a status hearing and

---

[1] Beginning in approximately September 2013, Nicholas became the subject of two juvenile delinquency proceedings. The juvenile court treated both of Nicholas' cases as if they were consolidated, although our record does not reveal a formal order of consolidation. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-202(C). In this appeal, the two cases are also treated as if consolidated.

accepted the intermediate sanction of serving nine days in the Mohave County Juvenile Detention Center. Later that month, Nicholas was ordered to participate in the Mohave County Drug Court Program.

**¶6**　　　　In April 2014, a Petition to Revoke Probation was filed and Nicholas entered into another disposition agreement, admitting violations of probation. The violations included an assault offense, the receipt of one day of in-school suspension, and the receipt of nine days of out-of-school suspension for throwing a rock at another student's head and causing an injury. At the disposition hearing, Nicholas was again reinstated on standard probation for one year.

**¶7**　　　　In early November 2014, a Petition to Revoke Probation was filed. On December 16, 2014, Nicholas entered into another disposition agreement, admitting violations of probation, and the juvenile court set a disposition hearing for February 2015. Prior to the scheduled disposition hearing, a Petition to Revoke Probation was filed alleging additional probation violations. At the adjudicatory hearing on January 27, 2015, the juvenile court found that the parties had reached a disposition agreement, which was signed by Nicholas on January 26, 2015. The juvenile court directed the submission of a Disposition Report. The Disposition Report, dated February 24, 2015, reported that Nicholas scored a twenty with a fifty-five percent chance of recidivism, which is considered a high risk on the Arizona Youth Assessment System. After consideration of Nicholas' past record in the juvenile court, his actions in the current matter, the recommendation of his probation officer, and the recommendations of his counsel, the juvenile court determined that commitment to the ADJC was appropriate, explaining as follows:

> Probation is basically telling me it's not so much that they don't want to offer JIPS to you, it's just that they've exhausted the resources. They've given you everything they could give you.

**¶8**　　　　Accordingly, the juvenile court committed Nicholas to the ADJC until his eighteenth birthday. Nicholas timely appeals. We have jurisdiction in accordance with Arizona Revised Statutes ("A.R.S.") section 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103.

## ANALYSIS

### I.  Alleged Ineffective Assistance of Counsel

**¶9**        Nicholas contends that he was denied effective assistance of counsel.  While claims of ineffective assistance of counsel in adult criminal cases will not be addressed on direct appeal absent a prior proceeding in which the claims are pursued under Rule 32 of the Arizona Rules of Criminal Procedure, *see State v. Spreitz*, 202 Ariz. 1, 2, ¶ 4 (2002), there is no corollary proceeding under the Rules of Procedure for Juvenile Court.  We will thus address asserted claims of ineffective assistance of counsel in a juvenile delinquency appeal.   *See Maricopa Cty. Juv. Action No. JV-511576*, 186 Ariz. 604, 606–07 (App. 1996).  If, however, as in this case, an ineffective assistance claim has not been presented to the juvenile court, our review is limited to determining whether there is a colorable claim.  If a colorable claim is asserted, we will remand for fact finding by the juvenile court.

**¶10**        To prevail on a claim of ineffective assistance of counsel, an appellant must show (1) deficient representation and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.  *State v. Gerlaugh*, 144 Ariz. 449, 455 (1985) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).  Deficient representation is proved "only if, after examining all the circumstances existing at the time of the alleged act of ineffective assistance, we conclude that counsel's actions fell below objective standards of reasonable representation."   *Id.*   The acts or omissions constituting ineffective assistance of counsel must be specified and must amount to more than mere speculation.  *State v. Rosario*, 195 Ariz. 264, 268, 987 P.2d 226, 230 (App. 1999).

**¶11**        Nicholas first argues that he received ineffective assistance of counsel when he "did not have an opportunity to confer with his attorney regarding the Disposition Agreement until approximately five (5) minutes prior to the hearing on December 16, 2014."   Neither Nicholas nor his counsel submitted an affidavit or declaration under oath attesting to these facts, however, and the record does not support this allegation.   The disposition agreement, which was signed by Nicholas on December 16, 2014, explicitly states that he has read the agreement with the assistance of counsel, understands its terms, and agrees to be bound.  Further, at the December 16, 2014 adjudicatory hearing, the juvenile court recited the terms of the disposition agreement and advised Nicholas of the possible consequences resulting from entering into the disposition agreement.  The

court then asked Nicholas whether he admitted the allegations contained in the petition. Nicholas answered in the affirmative. We therefore find this argument unpersuasive.

¶12 Nicholas next argues that he received ineffective assistance of counsel the day before the January 27, 2015 adjudicatory hearing when he signed the disposition agreement and spoke with his counsel. As with his prior contention, Nicholas has not presented any sworn testimony supporting the asserted facts and the record does not support his allegations. The disposition agreement explicitly states that Nicholas read the agreement with the assistance of counsel, understands its terms, and agrees to be bound by its provisions. During the adjudicatory hearing, Nicholas was asked whether he had read the disposition agreement, signed the disposition agreement, and whether he agreed to give up his rights and enter into the disposition agreement. Nicholas answered each question in the affirmative. Accordingly, after review of the record and the circumstances existing at the time of the alleged acts of ineffective assistance of counsel, we conclude that Nicholas has failed to raise a colorable claim.

## II. Less Restrictive Alternatives to Placement in the ADJC

¶13 Nicholas next asserts that the juvenile court abused its discretion when it committed him to the ADJC. Specifically, Nicholas argues that the juvenile court failed to explore less restrictive alternatives to commitment because it did not place him on JIPS. The juvenile court has broad discretion to determine an appropriate disposition for a delinquent juvenile, and we will not alter that disposition absent an abuse of discretion. *In re Niky R.*, 203 Ariz. 387, 390, ¶ 10 (App. 2002).

¶14 Pursuant to a mandate by the legislature, the Arizona Supreme Court developed guidelines in order to assist juvenile courts in determining whether commitment is an appropriate disposition. A.R.S. § 8-246(C). The guidelines are used "in conjunction with any other factors relevant to the commitment of a juvenile to the care and custody of the ADJC." Ariz. Code of Judicial Admin. § 6-304(B)(2). The commitment guidelines are not mandatory, however, and do not constrain the juvenile court's broad discretion. *Pinal Cty. Juv. Delinquency Action No. JV-9404492*, 186 Ariz. 236, 238 (App. 1996). Further, the juvenile court is not required to make specific findings or a record showing that it has explored all of the alternatives to the ADJC prior to commitment. *See Niky R.*, 203 Ariz. at 392, ¶ 21. Instead, the statute requires only that the court consider the guidelines. *JV-9404492*, 186 Ariz. at 238.

¶15　　　　Here, the juvenile court considered Nicholas' criminal history as well as his actions in the present matter.  The court explicitly considered Nicholas' counsel's recommendation for less restrictive alternatives, including JIPS, and stated that "the Court has taken into consideration the arguments of counsel."  In ordering Nicholas committed to the ADJC, moreover, the court found that probation had "exhausted the resources" available to assist him.  The court also found that Nicholas had been provided many opportunities in the past to rehabilitate, he had failed to take advantage of those opportunities, and commitment to the ADJC was required to get Nicholas the help that could not be provided by Mohave County.

¶16　　　　In light of Nicholas' repeated violations of probation and criminal history, the juvenile court did not abuse its discretion by committing Nicholas to the ADJC rather than placing him on JIPS.

## CONCLUSION

¶17　　　　For these reasons, the juvenile court's adjudication and disposition are affirmed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama