NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE RICHARD C.

No. 1 CA-JV 15-0276
FILED 2-4-2016

Appeal from the Superior Court in Yavapai County
Nos. V1300JV201380077, V1300JV201380106, V1300JV201380123,
V1300JV201380142, V1300JV201580132, V1300JV201580027,
V1300JV820080116
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Yavapai County Attorney's Office, Camp Verde
By Janee Pousson
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which
Presiding Judge Andrew W. Gould and Judge Margaret H. Downie joined.

**G E M M I L L**, Judge:

¶1        Juvenile Richard C. ("R.C.") appeals his commitment to the Arizona Department of Juvenile Corrections following a delinquency adjudication.  For the following reasons, we affirm.

## BACKGROUND

¶2        In July 2013, R.C. was adjudicated delinquent for counts including harassment, possession of marijuana, criminal damage, and attempt at destruction of a public jail.  The juvenile court placed R.C. on a two-year term of juvenile intensive probation beginning in September 2013.  In January 2015, a petition was filed against R.C. alleging one count of felony burglary and one count of misdemeanor theft, both in violation of his probation conditions.  R.C. admitted to both charges, was adjudicated delinquent, and the juvenile court continued his term of intensive probation until March 2017.

¶3        In June 2015, R.C. was the subject of another petition alleging possession of drug paraphernalia and violation of probation conditions.  R.C. admitted to the offenses and was adjudicated delinquent in August 2015.  At the disposition hearing, the juvenile court committed R.C. to the Arizona Department of Juvenile Corrections ("ADJC") Adobe Facility for a minimum term of nine months.  R.C. timely appeals, and this court has jurisdiction under Arizona Rule of Procedure for the Juvenile Court 103(A) and Arizona Revised Statutes ("A.R.S.") sections 8-235(A) and 12-120.21(A)(1).

## ANALYSIS

¶4        R.C. argues that commitment to the ADJC was an inappropriate disposition.  R.C. contends he is not a threat to the community such that commitment is warranted and the juvenile court failed to consider alternatives to ADJC before it made its order of commitment.  The juvenile court has broad discretion to determine the proper disposition for a juvenile it adjudicates delinquent, *In re Kristen C.*, 193 Ariz. 562, 563, ¶ 7 (App. 1999), and we will not overturn the court's commitment order absent an abuse of that discretion, *In re Niky R.*, 203 Ariz. 387, 390, ¶ 10 (App. 2002).

¶5        The ADJC is required to provide "secure care facilities for the custody, treatment, rehabilitation and education of youth who pose a threat

to public safety." A.R.S. § 41-2816(A). Before a juvenile court commits a juvenile into ADJC custody, it must consider the guidelines set forth in the Code of Judicial Administration ("Guidelines"):

> 1. When considering the commitment of a juvenile to the care and custody of ADJC, the juvenile court shall:
>
>> a. Only commit those juveniles who are adjudicated for a delinquent act and whom the court believes require placement in a secure care facility for the protection of the community;
>>
>> b. Consider commitment to ADJC as a final opportunity for rehabilitation of the juvenile, as well as a way of holding the juvenile accountable for a serious delinquent act or acts;
>>
>> c. Give special consideration to the nature of the offense, the level of risk the juvenile poses to the community, and whether appropriate less restrictive alternatives to commitment exist within the community; and
>>
>> d. Clearly identify, in the commitment order, the offense or offenses for which the juvenile is being committed and any other relevant factors that the court determines as reasons to consider the juvenile a risk to the community.

Ariz. Code of Judicial Admin. § 6-304(C); *see also* A.R.S. § 8-246(C) (directing the Arizona Supreme Court to cooperate with ADJC in developing an assessment to be used for determining appropriate juvenile dispositions); *In re Melissa K.*, 197 Ariz 491, 495, ¶ 14 (App. 2000). The Guidelines must also "be used in conjunction with any other factors relevant to the commitment of a juvenile[.]" Ariz. Code of Judicial Admin. § 6-304(B)(2).

## I.     Threat to Community Safety

¶6          R.C. asserts the juvenile court abused its discretion by determining that he was a risk to the community. Accordingly, he argues commitment was an inappropriate disposition because the Guidelines and

A.R.S. § 41-2816 require that a juvenile pose a "threat to public safety" before he or she is placed into ADJC custody.

¶7            Although the juvenile court is required to consider the Guidelines when making a disposition, it is not required to follow them. *In re Melissa K.*, 197 Ariz. at 495, ¶ 14. Moreover, A.R.S. § 41-2816 does not set forth requirements for juvenile sentencing, but explains the role of the ADJC in operating and maintaining juvenile care facilities. And even if the juvenile court was required to find that R.C.'s behaviors pose a threat to community safety, there is sufficient evidence on the record to support this conclusion. Between 2013 and 2015, R.C. was adjudicated delinquent on felony and misdemeanor charges including burglary, theft, and attempted destruction of public property. As the juvenile court stated, R.C.'s "criminal activities affected other people," and therefore threatened community safety. We discern no abuse of discretion.

## II.     Less-Restrictive Disposition Alternatives

¶8            R.C. also argues that commitment is inappropriate because his behavior can be controlled in less-secure settings. He asserts the juvenile court was required to consider less-restrictive alternatives before it committed him to ADJC. We disagree.

¶9            First, there is no requirement that the juvenile court provide findings demonstrating that it has considered all lesser alternatives. *Niky R.*, 203 Ariz. at 392, ¶ 20. Second, the record indicates the juvenile court in fact considered whether a third imposition of juvenile intensive probation, rather than commitment, would be an appropriate disposition. In so doing, the court stated that it was "not seeing enough effort" to justify continuing R.C. on intensive probation. The court pointed to R.C.'s "multiple felonies," his "outright defiance of [the] Court's Orders and the law," and his failure to change his behavior despite his placement on intensive probation. Because R.C.'s behaviors demonstrate "persistent and delinquent offenses," *see* A.R.S. § 41-2816, and because the alternative of additional intensive probation was deemed unlikely to modify R.C.'s behaviors, the juvenile court did not abuse its discretion by committing him to the custody of the ADJC.

**CONCLUSION**

¶10        We affirm.



**Ruth A. Willingham** · **Clerk of the Court**
F I L E D : ama